thank you thank you your honor good morning and may it please the court this case involves a police officer and a business owner the business owner saw the detective Morenberg he approached him and told him about a problem that he was having with mr. Collins who was suing him in a civil action that was after he had reported and the police uniformed officer had taken a crime report on the loss of the plates right that is correct so the first contact was actually between mr. Chadwick and the Colton Police Department not the detective that is correct all right and when when the when nothing came of the report that mr. Chadwick had made to the police officer who initially invested the case he ran into Morenberg who was somebody who he had known for over 20 years so the case had not been assigned to a detective yet is that it had not been it's a matter of fact it was never assigned to detective Morenberg ever well he worked the case I mean it worked the case I'm not sure what the distinction you're trying to make is well he is he is a detective the entire force yeah but his job is to investigate crimes a crime report had been made what what's wrong with that oh I'm not saying anything is wrong with it your honor okay yeah I thought you were insinuating something unethical about oh no I'm just saying no I'm just saying that he never was assigned to the case he assigned himself to the case generally his sergeant would assign him to a case okay so you are insinuating that there was something improper about that well I think that what I'm what I'm trying to point out is that there was a long-standing relationship between Chadwick and detective Morenberg let me move on and and concede that point to you so at at the time that detective Morenberg met with Chadwick Chadwick told him that Collins had stolen the license plates from the vehicle that it should not have come with and then he also gave detective Morenberg the case file the basically the deal file and in that deal file was contained a number of documents all of which indicated that the license plate was on the vehicle including the application for insurance mr. corporate I'm not sure where you're going with the argument but there were no taxes paid to the state of California on the sale or transfer the vehicle because at least mr. Chadwick understood that the vehicle was going to be taken out of state and yet miss your client is found in possession of the vehicle with the plates that should have been surrendered to DMV at the time of the initial transaction and all this gets included in the report of investigation and turned over to the San Bernardino County District Attorney who reviews the file and decides that there's probable cause to file felony charges against mr. Collins what's the problem here I don't see the issue well the issue is that mr. Collins says that he did not take the plates that the plates came with the vehicle and the tax should have been paid by Chadwick that's who has to whenever you buy a car you don't separately pay the the sales tax or the registration that's done by the dealership isn't there information uncovered in the investigation mr. Flores a lot attendant told the police that he took the plates off the car and he left them in the office on the day of the initial transfer absolutely not your honor well I didn't I read something in the report to that effect if you did you must have misread it because well here's what here's what happened that mr. Chadwick told detective Morenberg that the lot person had taken the the license plates off of the vehicle let me refer you to SCR zero zero three the declaration of Hector Flores and then paragraph four after the truck was sold Scott Chadwick and the finance manager Darren told me to remove the license plates from the Chevy truck I then went out to the truck which was parked near the office and I removed both the front and rear license plates I then returned to the office with the license plates and I left the license plates in the office this is a customer who purchased the truck was in the office at the time I left the license plates there isn't that in the record that is a declaration that was made by mr. Flores for man who was the lot man at the in support of the motion for summary judgment however in his testimony will cause correct in his yes and that and the fact that go to establishing probable cause that mr. Collins must have taken the plate that is something that was never in in the understanding of detective Morenberg but I thought you said that mr. Chadwick told the detective that his lot man took the plates yes and and as a result man says in his declaration that that is so yes but in his declaration mr. Chadwick says that he talked to the lot man and to all other employees about this incident after the incident took place and nobody including the lot man remembered one way or the other on that issue that was in his in in his deposition counsel the question in this case is whether there was one of the questions is whether there was probable cause yeah it's not beyond a reasonable doubt so no I understand many times in an investigation some witnesses will say something some witnesses will say something else that doesn't mean there's not probable cause that a crime has occurred so why would there be a lack of probable cause because certainly I understand your client has a different version of events that's often the case in criminal investigations so what more is there than that well he never detective Morenberg never talked to the lot man never asked him one way or the other never talked to him at all just took mr. Chadwick's word for it and then when he went I'm sorry when he went to talk to mr. Collins he went there with the intention of not finding out what mr. Collins had to say but to seize his vehicle and all of the detective Morenberg that were in there that were pertinent to his lawsuit with regard to this truck let's assume that's the case then I mean yeah the question here is that did the detective at the time that the car was seized was there probable cause that a crime had occurred and he had information from mr. Collins who had been reliable in the past I believe there's a mr. Ruiz who had called and said some strange things were going on there was the former owner of and I'd like to I'd like to discuss mr. Boyd for just a second time so yeah with regard to mr. Boyd detective Morenberg accused mr. Collins of trying to bribe mr. Boyd and he said that he heard that directly from mr. Boyd mr. that that conversation with mr. Boyd that is not reflected in in the police report that exactly my point your honor what he told the police officers who were who were there to effectuate the seizure of the vehicle he told them that and told mr. Collins that mr. Boyd had told him that mr. Collins had tried to bribe him for $200 the evidence from mr. Boyd's testimony is that he never talked to detective Morenberg and that he certainly never told him that he had been bribed and that he absolutely never had been bribed this is like a smoking gun your honor why would he do this if the real person that he thought had been Mr. Ruiz who was a who is a person who used to live in the or still lives in this motel where mr. Collins was staying who had very hard feelings against mr. Collins and who called mr. Chadwick and told him that mr. Collins was going to sue him and that he would do anything that he could do to help out mr. Chadwick so the the first allegation of a bribe was that mr. Boyd had been bribed there was absolutely no evidence that detective Morenberg had at the time that he made those allegations not only to mr. Collins but also to the police that there was any such activity that had taken place okay thank you very much good morning your honors and may it please the court Christopher Pisano best best and Krieger on behalf of detective Jack Morenberg and the city of Colton there are some overlapping issues amongst the respondents in this case miss Brady who represents mr. Chadwick is going to address the collateral estoppel argument because that's more applicable to her client I'm going to address some of the others I wanted to focus my remarks on something that was said in the reply brief and that it is on pages six and seven and it's really talking about the standard of review of summary judgment motions and the appellants attempt to parse out and create a distinction in the standard for economic versus non-economic cases and that simply does not exist it's talking about the Matsushita case and the Matsushita case is admittedly an economic case it's a RICO case involving predatory pricing but it's also the underlying allegation is that there was a conspiracy to engage in the predatory pricing scheme the Supreme Court did not make a distinction of economic versus non-economic causes of action what the Supreme Court did was look at the Advisory Committee's notes the 1963 notes when rule 56e was revised and what they said was that rule 56e when when you read it in total it creates somewhat of a heightened standard when the allegation on its face seems implausible if it makes no economic sense then the plaintiff has to come up with some persuasive evidence in order to raise that genuine issue of material fact and that I think gets to the crux of the issue with regards to Detective Moerenberg what on earth was in it for him that's a question that has never been answered it's a question I posed at the hearing on the summary judgment and it's a question I would today Detective Moerenberg was a 30-year veteran of the force he barely knew Mr. Chadwick they had a shared hobby and he had investigated a couple of other crimes at the dealership that was the extent of the relationship. Counsel why why are you so worried about this issue of motivation? Motivation really has nothing to do with the probable cause analysis that were required to do on both the seizure and malicious prosecution claims so why do you why do we even get drawn into that to that issue? The reason your honor is that I everything the entire case of the appellant and the plaintiff hinges on this supposed conspiracy that Mr. Chadwick and Detective Moerenberg were in cahoots to essentially put the screws to Mr. Collins so he would drop his civil lawsuit. Detective Moerenberg didn't care about the civil lawsuit it had nothing to do with him so why would he risk his 30-year career fabricate evidence lie on the stand risk criminal prosecution to help a passing acquaintance? I think it just shows that there's really when you when you peel the onion back even just past the first layer there's no there there when it comes to this case and each cause of action is like a domino that falls thereafter. When you talk about probable cause to seize the truck the court has picked up on this it's not a beyond a reasonable doubt standard it's a fair probability that a crime had been committed or was being committed and Detective Moerenberg had been told it was an out-of-state sale the plates had been removed he goes to the hotel and there's the truck with the plates. If that's not probable cause then what is? He certainly had probable cause to seize the vehicle. With regards to the other charges the perjury and the bribery the DMV statement of facts which was signed on the penalty of perjury says on its face it's an out-of-state sale and Mr. Collins signed that and then he sees the truck that's probable cause of perjury and then you get to the bribery and Mr. Corporate brought up Mr. Boyd and yes Mr. Boyd testified at his deposition two years later differently than what he told Detective Moerenberg. That doesn't mean that Detective Moerenberg is fabricating evidence it just means there's a discrepancy in the testimony. Mr. Ruiz testified consistently. He testified consistently or he told Mr. Detective Moerenberg that there was a bribe and then he testified in his deposition that there was a bribe. That's probable cause of the of the bribery. Very quickly on Monell because I want to leave Miss Brady her time. On Monell there has to be a showing and evidence that the customer policy was a moving force of the did was required that the form be filled out and that form is important because the complainant is acknowledging that it's a misdemeanor to submit a false application. Detective Jolliff didn't do nothing. He didn't refuse to investigate. He gave them the form and said if you fill this form out and send it back to me I will investigate. They never sent back the form. There's no evidence of Monell. The city should not be in this case. With that I'm going to move on. Good morning your honors. Erin Brady on behalf of Scott Chadwick. I just have a few issues to address. I just want to inform the court that as it has already keyed in the issue the standard for probable cause is was it objectively reasonable for the defendant to suspect plaintiff had committed a crime. As to my client it was objectively reasonable from the evidence that was put forth at the license plate. He removed the license plate. My client then began to receive all these phone calls from people afterwards warning him that something was going on with Mr. Collins. Then he receives notification that Mr. Collins still had the license plates on the truck. He became concerned for his own business and he made a police report. That's the basis of his liability and they're just it was objectively reasonable for him to report stolen license plates at that time. I want to move on to one or two statements that were made by counsel for Mr. Collins. As far as the accusation that Mr. Detective Morenberg and Chadwick were close friends or had known each other for 30 years. As counsel has already pointed out the extent of their knowledge of each other was minimal at best. They had run into each other at one event. That is the other outside of their business conduct whereas Detective Morenberg was researching events that happened and police reports over the auto sales shop. Other than that they didn't know each other. They never socialized and the record is at ER. I thought you were going to address the collateral estoppel issue. I will absolutely address that your honor. Collateral estoppel in this case applies because as a standard of probable cause is objectively reasonable. At the criminal hearing for Mr. Collins the court found that there was probable cause to hold him over for trial on the issues as Detective Morenberg arrested him for and therefore collateral estoppel applies. Those are the same issues here. The court there found that Detective Morenberg and Mr. Chadwick both who testified at that hearing and both who were extensively cross-examined by Mr. Cooper at that hearing who was representing Mr. Collins found their testimony credible and found, unfortunately I don't have the quote in front of me, but found that it was credible to believe that the acts had been committed. And the testimony the judge based that on at that criminal hearing was a testimony. I didn't see anything in the record about the credibility finding. What I saw was sort of the standard I'm binding him over finding there's probable cause. The court found that there was. That's not a credibility finding. It doesn't say specifically credible as to those two witnesses. It says I found there's more reason to believe and I apologize don't have the quote in front of me. So your argument is that in order to reach that determination the preliminary hearing the judge had to necessarily conclude that the witnesses for the prosecution were credible. Absolutely, your honor. That is exactly my argument. The only two witnesses that were there were Mr. Chadwick and Detective Morenberg and their credibility was challenged by Mr. Cooper extensively on cross-exam and he had a full opportunity to do so and the court found that there was evidence to base to find probable cause to hold him over. And therefore the issue was fully addressed in the criminal court and collateral estoppel applies. Where that we have certified to the California Supreme Court in a different case this very question as to whether or not a finding of probable cause at a preliminary hearing can serve as a basis for collateral estoppel and subsequent litigation. I did see that your honor. I understand that and I personally haven't seen this so I just learned about this this morning that I understand the Supreme Court had declined to accept that question but I could be mistaken on that. News to me. As I said I haven't seen that. We would send them notes and letters and they'd say thank you very much but no. However we had a little meeting with the California Supreme Court Chief Justice and she said no we like certified questions and then they started accepting them so okay if they've declined on this one that's news to me. We can check that. And I apologize I don't know for sure if I'm I was going to go but the source of my information is co-counsel's former business associate who was on this case previously but I I have not personally. Oh you're the source? You're the unimpeachable source. So we apologize that you know I am telling you all the reasons why I believe that but I do believe that even with that pending certified question your honor that the wiggy case applies in this matter and that the finding there and a green case is directly on point and that the probable cause determination was fully addressed at our preliminary hearing. Thank you very much counsel. Thank you.
judges: Lipez, Tallman, Owens